# IN THE COURT OF APPEALS OF IOWA

No. 20-0310
Filed May 13, 2020

**IN THE INTEREST OF C.P.,**
**Minor Child,**

**K.P., Mother,**
    Appellant,

**J.R., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Clay County, Andrew Smith, District Associate Judge.

    Parents separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

    Scott A. Johnson of Hemphill Law Office, PLC, Spencer, for appellant mother.

    Elizabeth K. Johnson, Spirit Lake, for appellant father.

    Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

    Shannon Sandy of Sandy Law Firm, P.C., Spirit Lake, attorney and guardian ad litem for minor child.

    Considered by Vaitheswaran, P.J., Greer, J., and Scott, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

A mother and father separately appeal the termination of their parental rights to their child, born in 2018. The mother challenges the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court, argues the Iowa Department of Human Services (DHS) failed to make reasonable efforts at reunification, and requests a six-month extension to work toward reunification. The father challenges the sufficiency of the evidence supporting termination, argues termination is contrary to the child's best interests, questions the State's reasonable efforts at reunification, maintains a guardianship should have been established in a relative in lieu of termination, asks for the application of statutory exceptions to termination, and requests additional time to work toward reunification.

I.      **Background Facts and Proceedings**

This family came to the attention of DHS in March 2019, when the child presented to the hospital with a broken femur. The child was removed from the parents' care and placed with relatives under DHS supervision by an ex parte removal order, which was confirmed following a removal hearing. The parties stipulated to a child-in-need-of-assistance adjudication under Iowa Code section 232.2(6)(c) (2019). DHS initiated a liberal visitation plan; in addition to visits supervised by service providers, the child's placement allowed the parents to essentially visit the child whenever they wanted. The mother variously and inconsistently visited the child and would only stay for short periods of time. The father attended some visits, but he did not exhibit much of an interest in visiting the child. Service providers advised the mother of the importance of attending visits.

In early May, as a result of the mother's inconsistency in attending visitations, her visitations were reduced and a more structured visitation schedule was implemented. Around the same time, the father was arrested on multiple criminal charges. The mother continued to minimally participate in visitation throughout May. She also failed to meaningfully engage in substance-abuse and mental-health treatment as directed.[1]

At a family team meeting in late May, DHS reported its concerns to the parents, noting "the case could not have started any more poorly," and directing the parents to engage in services and attend visits. At the dispositional hearing about a week later, the juvenile court noted its concern for the parents' lack of participation in services and directed that the parents engage in services or anticipate a termination petition being filed. The court expressly asked each of the parents and counsel if they desired any additional services. All responded in the negative.

The mother became more consistent in attending visitation in June. She was also consistent in attending mental-health treatment, although she was inconsistent in attending substance-abuse treatment. In mid-June, the father was sentenced to an indeterminate term of imprisonment not to exceed two years. Toward late July, the mother reverted to inconsistent attendance at visits. Despite this, the mother filed a motion for additional services, requesting DHS take steps to establish paternity, semi-supervised visits, and the implementation of a plan to

---

[1] The mother has a history of mental-health issues. She has been diagnosed with depression, anxiety, borderline personality traits, adjustment disorders, and post-traumatic stress disorder.

return the child to her care. The mother's inconsistency in attending visits continued through August and into September. The mother's lack of attendance at visitation was largely attributable to her oversleeping, although the bulk of visits were scheduled to take place in the afternoon and evening hours. Based on the mother's inconsistent attendance at visitation, lack of consistent engagement in mental-health and substance-abuse treatment, and lack of a meaningful bond with the child, DHS recommended against allowing supervised visitation and instead recommended initiation of termination proceedings.

The mother's motion for additional services was considered at a review hearing in early September, after which the court concluded allowing semi-supervised visits would be inappropriate. At the hearing, the court questioned the mother regarding what services she would need to get her on track. She responded she needed a support system and "some sort of program" that "teaches [her] how to adult." However, the mother advised she had already taken steps to enter a residential education and job training program. DHS advised it would assist in facilitating the mother's entry into the program. The mother was accepted into the program shortly after the hearing. Upon her acceptance, the mother filed a second motion for additional services, requesting she be allowed to enroll in the solo parent program at her residential facility, which would allow for the child to be placed with her in the future. The State filed its termination petition in October. Thereafter, at the hearing on the mother's motion for additional services, the mother testified she wished to have the child placed with her at the facility after she demonstrated one or two months of compliance with and progress in the program. The court advised the mother she could enter the program and the court

would leave visitation and placement within the discretion of DHS based upon the mother's progress.

In early December, the mother filed a "motion for reasonable efforts," requesting, among other things, an additional six months to work toward reunification. Her motion was considered as part of the termination hearing a few days later. In the few months leading up to the termination hearing, the mother gradually increased her consistency in attending visitation. However, she had yet to consistently engage in meaningful mental-health therapy, the main issue permeating the proceedings. The mother testified she had been on a waiting list to see a mental-health therapist for a number of months. She agreed in her testimony that engaging in mental-health therapy is critical for her to maintain the ability to adequately care for her child. She had also not yet engaged in the residential education and job training program. The father remained incarcerated at the time of the termination hearing. He testified his anticipated release date was April 23, 2020.

Roughly three weeks after the termination hearing, the State moved to reopen the record, citing the mother's regression as to maintaining contact with the child. The motion was granted. The evidence presented showed that, following the termination hearing, the mother missed two of the child's appointments in mid-December and cancelled a visit around Christmas and declined the opportunity to make it up. The mother attended a medical appointment for the child in late December but then cancelled a visit with the child later the same day. The mother missed another medical appointment for the child on January 10. She cancelled

another visit on January 21. The mother offered various excuses for missing these interactions.

The court ultimately terminated the mother's parental rights pursuant to section 232.116(1)(h) and the father's rights under section 232.116(1)(e) and (h). Both parents appeal.

## II.     Standard of Review

Our review is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Analysis

### A.     Sufficiency of the Evidence

Both parents challenge the sufficiency of the evidence supporting termination under Iowa Code section 232.116(1). "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). As to termination under section 232.116(1)(h), each parent only challenges the State's establishment of the final element of that provision—that the child could not be returned to their care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time); *D.W.*, 791 N.W.2d at 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

At the times of the termination and subsequent hearing, the father was imprisoned. The evidence was clear and convincing the child could not be returned to his care. For the mother's part, she states there were no safety concerns during visits, points to the lack of concern regarding substance abuse and criminal and violent tendencies, and highlights the fact that she began to engage in mental-health services, albeit not until after the initial termination hearing. Upon our de novo review and given the mother's history of mental-health issues and their continuing prevalence despite years of mental-health services, we conclude the mother's mental-health issues still served as a barrier to reunification at the time of the termination hearing and hearing on the motion to reopen the record. We conclude the State met its burden under section 232.116(1)(h) as to both parents.

B.      Best Interests

The father argues termination of his parental rights is contrary to the child's best interests.[2] The father does not make any specific argument as to how consideration of the statutory factors contained in Iowa Code section 232.116(2) renders termination contrary to the child's best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

---

[2] The mother does not raise a best-interests argument. Thus, we need not address that step in the three-step termination framework as to the mother. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The father acknowledged in his testimony that he is a stranger to the child. The child has been in the same relative placement most of his life, and the relatives intend to adopt. The child is integrated into this familial setting, which, unlike the father, has provided and can continue to provide for his physical, mental, and emotional needs. Continued stability and permanency in this home are in this child's best interests. *See id.* § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children).

C.      Statutory Exceptions and Guardianship

The father passively suggests the juvenile court erred in declining to apply the statutory exceptions to termination contained in Iowa Code section 232.116(3)(a) and (c) and establish a guardianship in the child's relative placement. We consider the father's request for application of the exception contained in section 232.116(3)(a), which allows the court to forego termination if a "relative has legal custody of the child," in conjunction with his request for the establishment of a guardianship. The father did not request the establishment of a guardianship below, and there is no indication in the record that the juvenile court even considered the possibility of establishing a guardianship. Thus, the issue is not preserved for appellate review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) (noting issues must be raised and decided below before we will address them on appeal); *see also Stammeyer v. Div. of Narcotics Enf't*, 721

N.W.2d 541, 548 (Iowa 2006) (finding an argument not preserved for appeal when there was "nothing indicating the court ruled upon or even considered [it]").

Even if the issue had been preserved, we would begin with the principle that "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Although section 232.104(2)(d) allows for the establishment of a guardianship as a permanency option, section 232.104(3) requires "a judicial determination that [such a] planned permanent living arrangement is the best permanency plan for the child." *See B.T.*, 894 N.W.2d at 32–33. Determining the best permanency plan for a child is a best-interests assessment. A guardianship, rather than termination, would not promote stability or provide permanency to this young child's life. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child to the parent's custody."). Upon our de novo review, we conclude a guardianship in lieu of termination is not the best permanency option in this case.

As to the father's request for application of the statutory exception contained in Iowa Code section 232.116(3)(c), we find the evidence insufficient to show "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship." *See A.S.*, 906 N.W.2d at 476 (noting parent bears burden to establish exception to termination). We therefore decline to apply the statutory exception to termination.

D.      Reasonable Efforts

The mother argues the State failed to make reasonable efforts at reunification.  DHS "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(9).  "A child's health and safety shall be the paramount concern in making reasonable efforts."  *Id.* § 232.102(12).  Our focus is on the services provided and the mother's response, not on services she now complains were not provided.  *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000).  DHS need only provide those services that are reasonable under the circumstances.  *See In re S.J.*, 620 N.W.2d 522, 525 (Iowa Ct. App. 2000).

Specifically, the mother complains she was initially offered too much visitation, which essentially set her up for failure.  We agree with the State that the mother has not preserved error, as she did not raise this issue to the juvenile court prior to the termination hearing.  *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (noting, while DHS "has an obligation to make reasonable efforts toward reunification, . . . a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing"); *see also In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (noting parent must inform the juvenile court of a reasonable-efforts challenge in order to preserve error); *In re S.J.*, No. 14-0978, 2014 WL 4231161, at *2 (Iowa Ct. App. Aug. 27, 2014) ("A challenge to the sufficiency of the State's efforts to reunite parents with their children should be raised when the services are offered.").  In any event, after the frequency of the mother's opportunities for visitation were decreased as a result of her inconsistent attendance, she was still inconsistent in attending visits.  The fact

that the mother did not begin to consistently attend visitation until around the time the State filed its termination petition does not fall on the State. We conclude the State's efforts were reasonable under the circumstances.

To the extent the father challenges the State's provision of reasonable efforts at reunification for lack of visitation, he has not preserved error, as he did not raise the issue until the termination hearing. *See A.A.G.*, 708 N.W.2d at 91. In any event, prior to his incarceration, the father was given ample opportunities to attend visitation. He did not exhibit any interest. And, following the commencement of his incarceration, DHS reached out to the father to facilitate visits. The father chose to not have visits with the child in the prison setting.

E.    Extension

Both parents seem to request an additional six months to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

We acknowledge the lack of concern as to the mother regarding substance abuse, housing, and the mother's ability to demonstrate parenting skills during supervised visits. However, even though the mother had previously engaged in mental-health services for a number of years before the initiation of these proceedings, mental-health issues still remain. During these proceedings, the

mother did not meaningfully participate in mental-health services despite her acknowledgment that engaging in mental-health therapy was critical for her to maintain the ability to adequately care for her child on her own. While the mother began participating in mental-health services after the initial termination hearing, "[a] parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin" to exhibit an interest in regaining custody of their child. *C.B.*, 611 N.W.2d at 495. Upon our de novo review, we agree with the juvenile court that, "[g]iven [the mother's] history, therapy will be a long-term process," and "[t]here is no basis to believe [she] will have sufficient progress within six months to alleviate the concerns of potential harm which could befall [the child] if he were to be placed with her."

As to the father, his anticipated release date was roughly three months after the hearing for additional evidence. Even assuming he is released at that time, given his limited involvement in services and interaction with the child, coupled with his checkered past, we are unable to conclude the child could be placed in his care after being released from prison and engaging in only about three months of services in a noncustodial setting.

We, like the juvenile court, are unable to conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We thus affirm the denial of the parents' request for an extension.

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**